568 A.2d 1252

**COMMONWEALTH of Pennsylvania**

**v.**

**Harvey WEAVER, Appellant.**

Superior Court of Pennsylvania.

Argued June 7, 1989.

Filed Dec. 1, 1989.

Reargument Denied Feb. 12, 1990.

Burton A. Rose, Philadelphia, for appellant.

Norman Gross, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Before CIRILLO, President Judge, and ROWLEY and MONTEMURO, JJ.

ROWLEY, Judge:

This is a direct appeal from the judgment of sentence following appellant's conviction on charges of Conspiracy, Involuntary Deviate Sexual Intercourse and Possession of a Controlled Substance With Intent to Deliver. Appellant, represented by new counsel on appeal, is black and was tried by an all-white jury. Thus, this Court once again is called upon to apply criteria set forth by the U.S. Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Only the briefest summary of the facts is necessary. At the invitation of appellant's co-defendant Eric Alston, 19–

year–old Patricia M. came from Washington D.C. to Philadelphia with a friend for a weekend visit. During the course of the weekend Patricia and her friend were physically and sexually assaulted by appellant and his co-defendant. Both of the perpetrators and both of the victims are black.

Appellant raises three issues on appeal. First, appellant argues that he was denied his right to trial by a fair and impartial jury because the Commonwealth used five of its eight peremptory challenges to strike the remaining five black venirepersons from the panel[1] and failed to provide valid, neutral reasons as required by *Batson v. Kentucky, supra.* The Commonwealth, which adamantly denies any racial bias in selection of the jury, argues that it was not required to state reasons for the peremptory challenges because the trial court at no point found that a prima facie case of discrimination had been established by appellant. Thus, we are called upon to determine whether the trial court erred in failing to hold that a prima facie case of discriminatory selection had been established by appellant. Because we so find, the case must be remanded for a hearing before the trial court to enable the prosecutor to present reasons for his challenges and a determination by the trial court whether the reasons given are racially neutral.

## I.

Our scope of review was set forth in the recent case of *Commonwealth v. Jackson*, 386 Pa.Super. 29, 562 A.2d 338 (1989) (en banc) (plurality): "[A]n appellate court will reverse a trial court's finding of no discrimination [in the jury selection process] only if that finding is clearly erroneous." *Id.*, 386 Pa.Superior Ct. at 53, 562 A.2d at 350.

A prima facie case of racially discriminatory jury selection has three elements: 1) the defendant's membership in a cognizable racial group; 2) the prosecutor's use of peremp-

---

1. Initially, the panel of venirepersons contained seven black persons. Two were struck for cause.

tory strikes to exclude members of that group; and 3) an inference arising under the totality of the circumstances that the prosecutor used the strikes to exclude venirepersons on account of race. *Commonwealth v. Jackson, supra,* citing *Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846 (1989). *Batson, supra* held that once the trial court determines that defendant has made a prima facie showing of discrimination, the burden shifts to the Commonwealth to justify its decision to strike minority jurors.

In determining whether a prima facie case of discriminatory selection has been established by a criminal defendant, obviously it is the third element, the *inference* that the peremptory strikes were racially motivated, which is the most difficult to establish.[2]  In *Jackson, supra,* the trial court ruled that the defendant had presented a prima facie case of discriminatory selection where the prosecutor used all seven of his peremptory challenges to strike black venirepersons from the jury and the ultimate composition of the petit jury was 9 whites, 1 Asian and 2 blacks.  In the case at bar, the prosecutor used five of his eight peremptory challenges to exclude black venirepersons, resulting in an all-white jury.  Upon conclusion of the selection process in the case at bar, defense counsel moved for a mistrial on the basis of discriminatory selection.

### A.

■ *Batson* indicates that once a defendant presents argument on the three elements, the trial court should consider "all relevant circumstances" and make a determination whether a prima facie case has been established. Only when the court determines that a prima facie case has been made out is the Commonwealth required to set forth its reasons for exercising the strikes.

This procedure was not followed in the case at bar. After appellant's counsel moved for a mistrial and stated for the record the facts which he felt raised an inference

2.  *See* Concurring opinion by Cirillo, P.J. in *Commonwealth v. Jackson, supra,* 562 A.2d at 356.

that the prosecutor had purposefully excluded blacks, N.T. at 41–43, the prosecutor immediately inquired, "May I respond to that?" N.T. at 43. Without deciding whether a prima facie case had been established, the trial court gave the prosecutor an opportunity to speak. The prosecutor proceeded to respond to what he considered to have been a personal attack accusing him of being racist. *Id.* In addition, he responded that this was not a racial case because the complainants were black and not white,[3] and he charged that defense counsel had used all of their strikes on the white members of the jury. Without comment, the court denied the motion for mistrial and exceptions were taken.

We hold, under the circumstances of this case, that denial of the motion for mistrial was the functional equivalent of a finding by the trial court that appellant had not established a prima facie case.[4] Additionally, we hold that the court erred in not holding that a prima facie case had been established.

## B.

■ In deciding whether the trial court erred, we first review factors which a trial court should consider. Judge Beck, writing for the plurality in *Commonwealth v. Jackson, supra,* noted:

3. The Commonwealth cited, *inter alia, Commonwealth v. McKendrick,* 356 Pa.Super. 64, 514 A.2d 144 (1986), *allocatur denied,* 514 Pa. 629, 522 A.2d 558 (1987), in which appellant was tried by an all-white jury. A panel of this Court affirmed the trial court's opinion that no inference of racial bias was shown, in part because there were no racial issues in the case. Distinguishing *McKendrick,* Judge Beck, writing for the plurality in *Jackson, supra,* noted: "[E]ven where the defendant and the victim are both black, some prosecutors may attempt to minimize the number of blacks who are selected as jurors. Thus, the fact that a defendant is a member of the same racial group as the Commonwealth's witnesses is in no way inconsistent with a finding of a prima facie case." *Jackson, supra,* 562 A.2d at 346.

4. Compare *Commonwealth v. Dinwiddie,* 373 Pa.Super. 596, 542 A.2d 102 (1988) in which our Court noted that "[t]he [trial] court's directive that the prosecutor provide an explanation for striking the black venire members evidences that the court was fully satisfied that appellant had presented a prima facie showing of discrimination." *Id.,* 373 Pa.Superior Ct. at 602, 542 A.2d at 105.

Factors which may be relevant to a determination as to whether the defendant has established a prima facie case include not only the race of the victim, the witnesses, and the seated jurors, but also: 1) the number of strikes used against minorities; 2) the percentage of minorities on the venire panel who were eliminated by peremptory strikes; 3) the past conduct of the prosecutor in challenging members of minority at other trials; 4) the type and manner of the prosecutor's statements and questions during voir dire; 5) similarities and differences between challenged and unchallenged venire panel members. Warning signs of possible discrimination include: 1) evidence that the use of peremptory challenges had a disparate impact on minority venire panel members; 2) evidence that challenged venire panel members had no characteristic in common except for race; 3) evidence that minority venire panel members were questioned in a manner that was especially likely to elicit disqualifying responses; and 4) evidence that minority venire panel members were struck while white panel members who had similar characteristics were retained. *See Ex Parte Branch*, 526 So.2d [609,] 622–23 (collecting cases); Acker, [*Exercising Peremptory Challenges After Batson* ], 24 Criminal Law Bulletin [187,] 197–201 (collecting cases).

*Commonwealth v. Jackson, supra,* 386 Pa.Superior Ct. at 48–49 n. 5, 562 A.2d at 347 n. 5. Our review of the record in this case, in light of the above-enumerated factors, leads us to the conclusion that appellant established a prima facie case which entitled him to a racially neutral explanation by the prosecutor.

First and foremost is the incontrovertible fact that the prosecutor's exercise of peremptory challenges resulted in an all-white jury. We note at the outset that the plurality in *Jackson* "d[id] not adopt a per se rule that any particular number of strikes against minority venirepersons must invariably give rise to a prima facie case." *Id.*, 386 Pa.Superior Ct. at 41, 562 A.2d at 344–345. Further, President Judge Cirillo wrote in his Concurring Opinion to *Jackson:*

[A]lthough the disproportionate impact of a challenged practice upon a racial minority or its potential to be abused by those of a mind to discriminate are proper considerations in determining whether the defendant has made out a prima facie case, those facts alone have never been viewed as sufficient to establish a constitutional violation. It is only if those factors *in combination with* all other facts that might tend to support or refute the existence of discriminatory animus give rise to an inference of intentional racial discrimination that the burden shifts to the government to prove that the appearance of discrimination can be explained by the application of permissible neutral criteria and procedures.

*Commonwealth v. Jackson, supra* (Cirillo, P.J., Concurring), 562 A.2d at 356 (emphasis in original; citations omitted). We agree that all factors must be considered. When *all* of the facts in this case which were available to the trial court, in combination with the fact that *all* black venirepersons were struck, are viewed in light of the factors set forth in *Jackson,* the conclusion is inescapable that the finding of no prima facie case was "clearly erroneous." [5]

■ *Batson* specifically states that a "pattern" of strikes against black jurors might give rise to an inference of discrimination. *Batson, id.* The use by the prosecutor of 5 of his 8 peremptory challenges to remove all potential black jurors, resulting in an all-white jury establishes such a "pattern" which requires that all of the other facts and circumstances available to the trial court be carefully scrutinized in order to determine whether there is an "inference" of unconstitutionally utilized strikes which requires an explanation. *Accord, Commonwealth v. Jones,* 374 Pa.Super. 493, 543 A.2d 579 (1988) ("prosecution's use of a peremptory challenge to eliminate the only member of the defendant's race raises inference of discrimination and entitles the defendant to an explanation"); *U.S. v. Chalan,* 812 F.2d

---

5. The trial court's discussion of the *Batson* issue was limited to the following: "Defendant's other complaints about his trial are groundless and deserve no response. He received a fair trial. An impudent drug dealer has been brought to justice." Tr. ct. op. at 5.

1302 (10th Cir.1987) ("if all of the jurors of defendant's race are excluded from the jury, we believe there is a substantial risk that the Government excluded the jurors because of their race").

The voir dire which was conducted by the trial judge, disclosed the following circumstances which should have been, but apparently were not considered by him in order to determine whether a prima facie case had been made out, when appellant timely moved for a mistrial. We focus on the "evidence that challenged venire panel members had no characteristic in common except for race" and "evidence that minority venire panel members were struck while white panel members who had similar characteristics were retained." *Commonwealth v. Jackson, supra,* 562 A.2d at 347 n. 5. From the first panel of prospective jurors, two black males were peremptorily stricken by the Commonwealth: *John F.,* of Frankford, a plumber for SEPTA, married to a computer operator, one daughter age 3; and *Frederick W.,* of Mt. Airy, fork lift operator, married to a teacher, two sons ages 22 and 25. Two white males and two white females were seated as jurors: *Edward L.,* of SW Phila., an engineer, married to a waitress, one son age 11 and daughters 12 & 14; *Mary H.,* of Oxford Circle, married to a truck driver, 3 sons aged 26, 27 and 29, and a daughter 31; *Denise J.,* of Mt. Airy, a single waitress; and *Joseph M.,* of SW Phila., a retired maintenance engineer, a widower with ten children, the youngest of which are 26-year-old twin boys.

From the second panel of prospective jurors, three black persons were peremptorily stricken by the Commonwealth: *Tyrone L.,* of North Phila., a divorced mailman with a 12-year-old daughter, his cousin is married to one of Mayor Goode's bodyguards; *Dolores P.,* of West Phila., a retired operating room technician married to a retired postal worker, two daughters 40 & 32, one son aged 38; and *Salena L.,* of Mt. Airy, a divorced machine worker with a son and daughter ages 12 & 14. Three white males were seated as jurors: *Vincent S.,* of Fox Chase, a systems engineer

married to an office manager, two sons aged 20 & 28, two daughters 26 & 27; *John K.*, of NE Phila., a data coordinator married to a housewife, they have a one-year-old infant; and *Joseph G.*, of NE Phila., a gas pressure controlman married to a teacher, no children.

The remaining jurors seated, all white, consisted of: *Mark P.*, of NE Phila., a production supervisor married to a housewife, four boys aged 6, 9, 12, 14; *Loretta N.*, of NE Phila., a data input operator married to a finance manager, one daughter aged 20 and two sons 17 & 15; *Brian S.*, of NE Phila., an office manager married to a clerical worker, one son aged 20 and a daughter 18; *Robert M.*, of Mt. Airy, a single computer operator, and *John M.*, of NE Phila., an auto mechanic married to a housewife, a daughter age 23 and a 21–year–old son.

The prosecutor volunteered his reasons for striking Frederick W. and John F. at N.T. 27 and 28. After review of those reasons, we hold that the Commonwealth has demonstrated a racially-neutral motivation in making those peremptory challenges. Frederick W. is a male with two boys the approximate age of the defendant. While it is true that four of the white males seated as jurors also have sons approximately the same age, each of them has at least one daughter of comparable age to the victims in this case. Thus, any conscious or unconscious bias presumably would be negated in those jurors who also have daughters.

John F., statistically, seems very similar to John K. who was accepted by the prosecutor from the second group of prospective jurors. Nevertheless, the prosecutor's reasoning that he was a male, of approximately the same age of defendants, who wore an expensive suit and would not look the prosecutor in the eye, was racially neutral under the reasoning in *Batson* and *Jackson.*

It is the prosecutor's challenges to the last three black venirepersons, however, which require an explanation. Tyrone L. was the father of a 12–year–old girl and had a relative who was married to one of Mayor Goode's body-

guards. As a mailman, he held a responsible job. As the father of a young girl, he would be expected to be more sympathetic to the prosecution's case than that of the defense. In short, he would seem to have been an ideal juror for the prosecution. We note further that white jurors having some of Tyrone L's characteristics were acceptable to the Commonwealth. Four of the white jurors seated had relatives by blood or marriage who were in law enforcement (Denise J., Loretta N., Brian S. and Robert M.).[6] Additionally, juror Edward L. has daughters who are aged 12 & 14. Appellant is entitled to an explanation why Tyrone L. was stricken.

Dolores P., the retired operating room technician, with three children, statistically seems very similar to Mary H., the mother of four who was acceptable to the prosecution in the first group of venirepersons. Dolores' husband is a retired postal worker. Mary's husband is a truck driver.

Salena L. is the divorced machine worker with 12 and 14 year-old children, the same ages as those of Edward L. and Mark P. Her employment as a machine worker is not widely disparate from that of John M. (auto mechanic), Denise J. (waitress), Joseph M. (retired maintenance engineer) or Mary H.'s husband (truck driver), each of whom were acceptable to the Commonwealth. Appellant is entitled to an explanation of why Dolores P. and Salena L. were

---

**6.** The Commonwealth argues in footnote 10 to its letter brief that "a personal bodyguard for an elected official [has] no greater law enforcement obligations than any other private citizen." This effort to distinguish Tyrone L. from the eight *white* venirepersons who were related to law enforcement personnel is not persuasive. The trial court asked the pool of venirepersons: "Do we have any policemen here? F.B.I. men? State troopers or anybody in law enforcement? Or do we have someone who is related to someone in law enforcement?" N.T. at 10. By responding to the judge's question as he did, it is evident that Tyrone L. *perceived himself* to be among the class of venirepersons who were related to law enforcement personnel. This is a more accurate predictor of the type of juror Tyrone L. would be, than the distinction put forth by the Commonwealth. We would add that some of the white venirepersons were related to a secret serviceman, a transit officer and a sheriff. The Commonwealth did not seek to distinguish each of the white jurors on *that* basis.

stricken, as well.[7]

The foregoing circumstances were all available to the trial court when appellant raised the issue following the voir dire. The court's failure to find, under these circumstances, that a racially neutral explanation was required from the Commonwealth was error.

In summary, the Equal Protection Clause requires that the jury selection process *be free from any taint of discriminatory purpose. Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880). In a case such as this, where the Commonwealth has struck *all* black venirepersons from the panel, the reasons for doing so must be racially neutral. We emphasize that the burden is on the *Commonwealth* to prove that the selection process was in fact racially neutral when the record made during the jury selection process established a prima facie case, as here. When a prima facie case of purposeful discrimination is presented by a defendant, as here, the Commonwealth is obliged to provide reasons of sufficient detail to permit meaningful review by the trial court and, if necessary, the appellate court. If on remand, in the case at bar, the trial court finds the Commonwealth's use of peremptory strikes as to the final three black venirepersons to have been racially motivated, the court shall vacate the judgment of sentence and order a new trial.

7. The Commonwealth stated in its letter brief that "in this case, involving charges of sexual assault and a defense of consent, the prosecutor was very likely inclined to eliminate men from the jury, and seek the inclusion of women, without regard to the race of venire persons." Letter brief at 12. This comment is contradicted by the record in this case.

From the first panel of prospective jurors, two men and two women were seated in the petit jury. The prosecutor then proceeded to strike two black women, *Dolores P.* and *Salena L.*, from the second panel of venirepersons. This left the composition at *five men* and two women, at this point.

Had the prosecutor, as the Commonwealth claims, been inclined to eliminate men in favor of women, he would have stricken either *Vincent S.* (who had two sons the approximate ages of the defendants), *Joseph G.* or *John K.* instead of striking the two black women. This would have left the composition of the petit jury at this point at *four women* and three men.

## II.

Appellant raises two additional arguments which must be addressed in the event that a new trial is not ordered on remand. First, appellant claims at least 17 instances of prosecutorial and judicial misconduct. As to the prosecutorial misconduct, the trial court adequately addressed and correctly decided this issue at pages 3–4 of its opinion.

As to the alleged judicial misconduct, appellant points to nine instances which he argues collectively rise to a level of misconduct that would entitle him to a new trial. Appellant cites absolutely no authority to support his position that he is entitled to a new trial on the basis of these comments. We have carefully reviewed each of the comments by the trial court and we find no basis upon which to award a new trial.

Last, appellant argues that trial counsel was ineffective in two respects: 1) for failing to object to an allegedly incorrect statement in the trial judge's charge as to how a jury may consider prior inconsistent statements; and 2) for failing to object to jury instructions regarding conspiracy, accomplice liability and involuntary deviate sexual intercourse.

The law presumes that counsel is effective and places upon appellant the burden of establishing his counsel's ineffectiveness. *Commonwealth v. Floyd,* 506 Pa. 85, 484 A.2d 365 (1984); *Commonwealth v. Dunbar,* 503 Pa. 590, 470 A.2d 74 (1983). If the particular course chosen by counsel "has some reasonable basis designed to effectuate his client's interests," counsel's assistance is deemed constitutionally effective. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). Only when the claim which has been foregone is of arguable merit must further inquiry be made into the basis for counsel's decision not to pursue the matter. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). Appellant must show not only that the omission by trial counsel was arguably ineffective, but he must also establish

"the likelihood that he was prejudiced as a result thereby." *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). Finally, appellant must demonstrate that the alternatives not chosen by his counsel at sentencing "offered a potential for success *substantially* greater than the tactics actually utilized, resulting in prejudice to the defendant." *Commonwealth v. Molina*, 358 Pa.Super. 28, 34, 516 A.2d 752, 755 (1986) (emphasis in original), *quoting Commonwealth v. Garvin*, 335 Pa.Super. 560, 566, 485 A.2d 36, 39 (1984). Based upon our review of the record, we find that appellant has not established an underlying claim "of arguable merit" with respect to either of the arguments.

Appellant first argues that trial counsel was ineffective for failing to object to the trial court's jury instruction to the effect that prior inconsistent statements of the witnesses could be considered only for impeachment purposes and not as substantive evidence. Until *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986), the law in this Commonwealth was that prior inconsistent statements of a non-party witness were not admissible as substantive evidence of the truth of the matter asserted therein. *Id.*, 510 Pa. at 127, 507 A.2d at 68. Our Supreme Court adopted in *Brady* the modern rule permitting prior inconsistent statements to be used as substantive evidence. The Court reasoned, "the out-of-court declarant is now a witness *in-court* where he or she is placed under oath, subject to cross-examination and under observation by the finder of fact." *Id.*, 510 Pa. at 128–129, 507 A.2d at 69 (emphasis in original). Thus, the trial court was in error where, two years following the *Brady* decision, it charged:

> You heard evidence that witnesses made a statement on an earlier occasion that was inconsistent with their testimony here. This evidence may be considered by you for one purpose only, that is to help you judge the credibility and the weight of the evidence given by the witness in this trial.

> You may not regard evidence of a prior inconsistent statement as proof of the truth of any matter asserted in the statement.

N.T. at 867. We must determine, however, whether this error was prejudicial. *See Commonwealth v. McMillan,* 376 Pa.Super. 25, 545 A.2d 301 (1988).

Appellant claims he was prejudiced because Patricia M. testified that she came to Philadelphia to visit appellant's co-defendant. "I didn't come up here to have sexual relationships with him because that wasn't what our relationship was based on. We was friends. It was more or less like he was my big brother," she testified. N.T. at 71–72. However, the other victim in this case was confronted with preliminary hearing testimony in which she had testified that she believed she would be engaging in sex during the weekend, and that Patricia M. had told her that she (Patricia) believed that she, too, would be engaging in sex. N.T. at 311.

Appellant took the stand and admitted to having engaged in sexual relations. His defense was that the relations were consensual. Since the only eyewitnesses to the events were the victims and the defendants, the Commonwealth's case rested almost entirely on the credibility of the victims.[8] Because this case turned on the credibility of the witnesses, it was actually *more important* for the appellant that the prior statement be considered for credibility purposes, than for its value as substantive evidence. This is because remarks made on the train prior to the weekend would have had little bearing on the issue of consent at the moment the intercourse occurred, after a morning of terror. It is evident from the verdict that the jury believed the victims' testimony that the defendants did not have permission to engage in intercourse with them in the apartment. N.T. at 121, 295. The jury found this testimony credible even

8. The Commonwealth did have the benefit of a tape recording of Patricia M.'s plea to a 9–1–1 emergency operator begging them to send help.

though they were also permitted to consider the prior inconsistent remark of one of the victims. With the case resting on credibility, the jury plainly believed the victim's *trial* testimony. Thus, we find the trial court's erroneous charge to have been harmless error under the circumstances of this case.[9]

Finally, appellant urges that trial counsel was ineffective for failing to object to jury instructions regarding conspiracy, involuntary deviate sexual intercourse, and the trial court's failure to charge on accomplice liability. In evaluating a trial court's instructions, we review the charge as a whole. *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61 (1983). Having thoroughly reviewed the charge, including the clarification on conspiracy at N.T. 886–87, we find no merit to appellant's arguments.

The judgment of sentence is vacated. The case is remanded for a hearing at which the Commonwealth may present its reasons for striking Tyrone L., Dolores P. and Salena L. from the jury panel. If the trial court finds that the prosecutor did not have a neutral explanation for the strikes, a new trial shall be ordered. However, if the court finds the Commonwealth has presented racially neutral reasons for striking the named jurors, judgment of sentence shall be reimposed. Both parties shall have the right of appeal from the trial court's decision. Jurisdiction is relinquished.

CIRILLO, President Judge, files a concurring and dissenting opinion.

CIRILLO, President Judge, concurring and dissenting.

I join in part II of the majority's opinion. However, I respectfully dissent to the majority's decision to vacate the

9. Allegedly inconsistent statements regarding the moment at which rings were removed from fingers, or the reason for the beating of Patricia M., appellant's brief at 41, are peripheral matters of little significance. Therefore, we do not discuss them.

judgment of sentence and remand for a *Batson* hearing. Appellant Weaver has failed to establish the necessary inference of discrimination, *Batson v. Kentucky*, 476 U.S. 79, 96–97, 106 S.Ct. 1712, 1723–24, 90 L.Ed.2d 69 (1986), and thus has failed to establish a prima facie case of discrimination. *Id.*; 343–44 *see also Commonwealth v. Jackson*, 386 Pa.Super. 29, 562 A.2d 338, 343–44 (1989); *Commonwealth v. Long*, 367 Pa.Super. 190, 532 A.2d 853 (1987). The burden shifts to the prosecutor to come forward with a neutral explanation for striking certain venirepersons from the jury only after a prima facie case of discrimination has been established. Based upon a review of the voir dire proceedings and the argument on post-trial motions in this case, Weaver has failed to establish a prima facie case. Therefore, the majority's decision to remand for a *Batson* hearing is inappropriate in this case.

A peremptory challenge is defined as the "right to challenge a juror without assigning a reason for the challenge." Black's Law Dictionary 1023 (5th ed. 1979). Its significance in our jury system has been well documented. The peremptory challenge has been described as a "necessary part of a trial by jury," *Batson*, 476 U.S. at 91, 106 S.Ct. at 1720, "one of the most important of the rights" in our criminal justice system, *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965), and "essential to the fairness of trial by jury," *Lewis v. United States*, 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892). Unlike a challenge for cause, for which an attorney is required to specify reasons why a prospective juror should not be allowed to be a member of the jury, a party may utilize a peremptory challenge to strike a potential juror "on his own dislike, without showing of any cause." H. Joy, On Peremptory Challenge of Jurors 1 (1844). As Chief Justice Burger aptly noted in his dissenting opinion in *Batson*, "[a]nalytically, there is no middle ground: A challenge either has to be explained or it does not." 476 U.S. at 127, 106 S.Ct. at 1739.

In *Batson,* however, a majority of the Supreme Court determined that a state's privilege to strike individual jurors must bend to the constitutional principle of equal protection. *Id.* at 89, 106 S.Ct. at 1719. Thus, a prosecutor is forbidden from challenging a potential juror solely on account of his or her race "on the assumption that black jurors as a group will be unable impartially to consider the [s]tate's case against a black defendant." *Id.* Since *Batson,* the peremptory challenge, when used in the case of a black defendant to strike one or more black venirepersons under circumstances suggesting racial animus, is no longer a peremptory challenge in its purest form; as a result of the *Batson* decision, it has become, in effect, a challenge for cause for which the prosecutor must give a race-neutral explanation. A prosecutor must provide the court with a race-neutral explanation, however, *only* if the trial court determines that based on the totality of the circumstances an inference of discrimination arises. *Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1723–24; *Jackson, supra,* 386 Pa.Super. at 41–43, 562 A.2d at 343–44. The evidentiary test is as follows:

> a defendant can establish a prima facie case [of racial discrimination] by showing that he is a "member of a cognizable racial group," that the prosecutor exercised "peremptory challenges to remove from the venire members of the defendant's race," and that those *"facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."* [*Batson,*] 476 U.S. at 96, 106 S.Ct. at 1723]. Once the defendant makes out a prima facie case of discrimination, the burden shifts to the prosecutor "to come forward with a neutral explanation for challenging black jurors." *Id.* at 97, 106 S.Ct. at 1723.

*Jackson, supra* (Concurring Opinion by Cirillo, P.J.) 386 Pa.Super. at 40–42, 562 A.2d at 342–43, *quoting Teague v. Lane,* —— U.S. ——, ——, ——————, 109 S.Ct. 1060, 1066, 1065–67, 103 L.Ed.2d 334 (1989) (emphasis added).

Here, Weaver presented the trial court with no facts concerning his jury selection which would support a finding of a prima facie case of discrimination. Weaver's argument on post-trial motions with respect to this issue is as follows:

You cannot tell me that that jury selection was not an exact intention to put an all white jury in those seats and preclude any blacks from being on that jury. Every black that came forward, Mr. Sax struck, Your Honor. It was intentional, it was noted, we had a side bar on it and what did Mr. Sax do? He came back, struck another and another black juror in the face of what Your Honor had noted to us.... [T]he prosecution cannot strike jurors on the basis of race strictly. And I believe and I aver that that, in fact, was done, Your Honor.

Weaver's argument established only that he is a member of the black race and that the prosecutor used his peremptory challenges to strike black members of the venire; Weaver failed to cite any facts or circumstances which would support an inference that the prosecutor's strikes were racially motivated. Neither the fact that Weaver is a member of the black race nor the mere fact that strikes were disproportionately exercised against minority venirepersons establishes a prima facie case of discrimination. The mere cry of "discrimination," even on an issue as sensitive as race, has never been enough to establish a prima facie case. *Jackson, supra* (Concurring Opinion by Cirillo, P.J.), 386 Pa.Super. at 40, 562 A.2d at 343, *citing Washington v. Davis*, 426 U.S. 229, 238–42, 96 S.Ct. 2040, 2046–49, 48 L.Ed.2d 597 (1976).

Based upon my review of the record, I find no facts or circumstances upon which the trial court could have based a finding of a prima facie case of discrimination. It is only in his appellate brief that Weaver for the first time points to the specific similarities in characteristics between black and white venirepersons. Under these circumstances, I would find that the trial court did not abuse its discretion in determining that no inference of racial bias on the part of

the prosecutor has been shown, and that no prima facie case of discrimination was established.

Additionally, I point out that the fact that the composition of the jury in this case was all white does not necessarily mandate an inference of racial discrimination. *See Commonwealth v. McKendrick*, 356 Pa.Super. 64, 514 A.2d 144 (1986), *allocatur denied*, 514 Pa. 629, 522 A.2d 558 (1987) (where defendant and his victim were both members of the black race, witnesses for both sides were black, and no racial issues were present in the case, appellant had not established a prima facie case under *Batson* despite the fact that appellant was tried by an all-white jury). The holding in *McKendrick* is not intended to imply, however, that where both the defendant and the complainant are black, a finding of a prima facie case is always precluded. The law in this area does not call for a mechanical response by a trial court simply because there are certain objective, observable facts before it, i.e., the number of blacks on the jury, the number of black venirepersons excluded, and the race of the victim.[1] In the instant case, this was *all* that was before the trial court. Without more, we cannot say that the trial court erred in determining that the defendant had failed to establish a racial motivation for the prosecutor's action.

Because I believe that the trial court was not presented with evidence establishing a prima facie case of discrimination, I find that the majority's decision today has incorrectly determined that the trial court abused its discretion. Therefore, I must register my dissent to part I of the majority opinion. I would affirm the judgment of sentence.

1. Although a finding of a prima facie case based only on these observable factors may appear to be a safe way for a trial judge to handle this issue, the fact remains that subtleties and subjective perceptions are the source and rationale of all peremptory challenges. Knowing full well that even the trial judge is not privy to all exchanges, or lack of exchanges, between an advocate and a venireperson, we have no choice but to rely upon the trial court to evaluate the atmosphere of the voir dire. This court is certainly not privy to averted eyes and sidelong glances.