573 A.2d 1132

**COMMONWEALTH of Pennsylvania**

v.

**Lewis STERN, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 10, 1990.

Filed May 1, 1990.

154

Marlene Cooperman, Philadelphia, for appellant.

Laurie Magid, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before DEL SOLE, MONTEMURO and TAMILIA, JJ.

TAMILIA, Judge:

Appellant herein, Lewis Stern, appeals judgment of sentence of life plus two and one-half to five years imprisonment imposed following his convictions of first degree murder[1] and possession of an instrument of crime.[2] Appellant and co-defendant, Steven Johnson, were convicted at a jury trial in which the evidence established that Johnson hired Stern to kill James Clark for Clark's failure to return drug money to Johnson after Clark made sales for him. An eyewitness, Joe Buxton, testified he saw not only the killing but the set-up by Johnson to get Clark to the murder scene.

1. 18 Pa.C.S. § 2502.
2. 18 Pa.C.S. § 907.

Although the co-defendants were tried simultaneously and have one issue on appeal in common, their appeals will be addressed separately. As to co-defendant, Johnson, *see Commonwealth v. Johnson,* —— Pa.Super. ——, —— A.2d —— (unpublished memorandum filed 4/16/90).

Stern's first assignment of error is that the prosecutor intentionally used his peremptory challenges to exclude black jurors from sitting at trial. Both defendants and the Commonwealth were allowed eight peremptory challenges during selection of the regular jury panel and two peremptory challenges during selection of the alternatives. The Commonwealth used six of its eight initial peremptory challenges against blacks and both peremptory challenges during selection of alternates were against blacks. The final jury panel consisted of ten whites and two blacks, after a black alternate took the place of a white juror who was excused due to hardship.

■ Appellant had the burden of proving to the trial court a prima facie case of discrimination by the Commonwealth in exercising its peremptory challenges. This rule and its requirements were set forth in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and recently reviewed by this Court, en banc, in *Commonwealth v. Jackson,* 386 Pa.Super. 29, 562 A.2d 338 (1989) (plurality Opinion).

In order to prevail, the defendant must initially establish a prima facie case of discrimination.

To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that

practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the impaneling of the petit jury, as in selection of the venire, raises the necessary inference of discrimination. [*Batson v. Kentucky,*] 476 U.S. at 96–97, 106 S.Ct. at 1723 (citations omitted). *See also Teague v. Lane,* 489 U.S. 288 [——], 109 S.Ct. 1060 [1066–67], 103 L.Ed.2d 334, 345 (1989).

Thus, a prima facie case of discrimination has three elements: 1) the defendant's membership in a cognizable racial group; 2) the prosecutor's use of peremptory strikes to exclude members of that group; and 3) an inference arising under the totality of the circumstances that the prosecutor used the strikes to exclude venirepersons on account of race.

*Id.,* 386 Pa.Superior Ct. at 40–41, 562 A.2d at 343. Only after a defendant proves a prima facie case of discrimination does the burden shift to the prosecutor to justify his strikes. *Id.,* 386 Pa.Superior Ct. at 41–43, 562 A.2d at 344.

Immediately after the jury was impaneled, appellant's counsel moved for the jury to be striken based on the alleged discriminatory selections of the prosecutor.

 Following the motion, the court permitted both defense counsel and the prosecutor to discuss with him the specific allegations of prejudice or bias.[3] The transcript illustrates that the trial judge seriously considered appellant's allegations of specific bias in the context of the voir dire, which he personally supervised. The trial judge exhibited a sound grasp and recollection of the proceedings, and in fact corrected misstatements of fact by appellant's counsel as to the selection process.

3. While it is not necessary for the prosecutor to justify his strikes nor was he required to do so, during the presentation of the prima facie case by appellant, most of his reasons for striking jurors were presented and considered. The fact that he did not justify every strike is irrelevant, as even if a prima facie case of discrimination is presented, the prosecutor may rebut the case without explaining every strike. *See United States v. David,* 803 F.2d 1567, 1571 (11th Cir.1986).

■ Appellant's counsel began by alleging that because the Commonwealth had exercised six of its eight peremptive challenges against blacks and only one against whites, and both of his peremptory challenges in choosing alternate jurors were used against blacks, the inference of bias existed. This is not a conclusive indicator, however, of discrimination as we have not adopted "a per se rule that any particular number of strikes against minority venirepersons must invariably give rise to a prima facie case." *Id.,* 386 Pa.Superior Ct. at 43, 562 A.2d at 344–45. Appellant does not compare any particular black venirepersons who were striken by the prosecutor with those jurors accepted by him to show us how his strikes were discriminatory. *See Commonwealth v. Weaver,* 390 Pa.Super. 434, 568 A.2d 1252 (1989).

■ Appellant's second specific allegation of bias was that in attempting to keep a white person, Juror 86, on the jury who wished to be excused for a minor medical problem, the prosecuting attorney questioned her for five minutes about her condition. She was excused for cause by the court. Mr. Campolongo's response was that he didn't believe the condition was a ground for nonservice as a juror since he suffered from it himself. A third instance involved Juror 447, who appellant's counsel alleges was questioned too extensively about her ability to judge people in light of her religious beliefs. Appellant's counsel admitted to asking similar questions but in a "different tone" and a less offensive manner (T.T., 11/24/88, p. 31). The trial judge determined this was a legitimate line of questioning even though it had not been asked of any white juror. The next incident alleged by appellant to have illustrated bias concerned a black, Juror 328, who, although he previously had sat as an alternate juror on another criminal trial, wanted to be excused from this trial because he did not want to sit on a murder case. By agreement of counsel, the court therefore excused him. Appellant's counsel argued the Commonwealth showed bias in that when a white person (Juror 86) asked to be excused, he questioned her for five minutes until such time the court excused her, but as to Juror 328, a

black person, no lengthy questioning was conducted before the court agreed to excuse the juror. We agree with the trial court that because all counsel agreed to excuse Juror 328, there is no merit to appellant's bias argument.

 As to the alternate jurors 13 and 14, appellant's counsel argued that although they were black, they were accepted only after the Commonwealth used its two challenges to exclude other blacks. It appears in this situation appellant's counsel was overzealous, misstated the facts and was corrected by Judge Sabo, who stated "[t]he first juror called for number 13 position he struck was black. But the second one that came in, he took. That was also a black." Mr. Medway responded "I stand corrected...." (T.T. 5/24/88, pp. 34.) The court pointed out that black Juror 32 had two nephews convicted of murder, and because the court refused to strike for cause, the prosecutor was forced to exercise a peremptory challenge. While he would not strike for cause, Judge Sabo believed it was a proper basis for a peremptory strike. Another black juror was a 20 year old female psychology major at Temple University. The court acknowledged that there could be a legitimate reservation about young psychology students as jurors. Juror 177 had a nephew convicted of murder. None of the above strikes on their faces appeared to be based on racial consideration or on considerations which would have been different for white jurors. The prosecutor pointed out that the Commonwealth exercised its peremptory challenges against blacks *and* whites according to various factors permitted in exercising peremptory challenges, whereas in this case the defense struck only white jurors. The prosecutor further explained that he accepted a black early on as well as an alternate who later served on the panel when another juror was excused. He went on in detail to explain his jury selection process. From the consideration of the above and all other factors he observed during the voir dire process, the trial judge properly denied the motion to strike the jury. We may presume thereby he found that appellant failed to establish a prima facie case of

discrimination in selecting the jury.[4] Appellant reiterated his argument in post-trial motions and the trial court again denied the claim. We agree with the trial court that a prima facie showing of discrimination was not made because appellant failed to prove, by the totality of the circumstances, an inference of discrimination. There would be no purpose in remanding this case, as was done in *Weaver, supra,* for the purpose of an evidentiary hearing to determine reasons for striking the various black jurors.

The facts of this case are clearly distinguishable from those of *Weaver, supra,* in that in *Weaver,* when defense counsel made his motion for mistrial, instead of allowing defense counsel to explain the basis upon which the prima facie case was asserted, before ruling on that motion, the prosecutor was permitted to respond that this was a personal attack against him, accusing him of being racist. Without comment, the court denied the motion for mistrial. Here, there was full dialogue and analysis with and by the trial judge. In addition, the trial court in *Weaver* had information available to him, which in addition to the fact there were *no* black jurors on the panel, could lead him to believe strikes of blacks was racial in nature as whites with similar characteristics were not stricken. While *Batson, supra,* requires that pursuant to the fourteenth amendment no juror be excluded because of *race,* it did not hold that an impartial jury mandated by the sixth amendment is a fair cross-section of the populous. This appears

---

4. Appellant's counsel also plays heavily on the statement made by the trial court that because both defendants were black and the victim was also black, there was no racial issue involved. While this is a consideration among others, the fact that the defendant and victim are of the same race does not preclude an attempt to establish a prima facie case. *See Commonwealth v. Jackson,* 386 Pa.Super. at 39–41, 562 A.2d at 343 (1989) (plurality Opinion by Beck, J.). However, in *Commonwealth v. Monroe,* 373 Pa.Super. 618, 542 A.2d 113 (1988), and *Commonwealth v. Long,* 367 Pa.Super. 190, 532 A.2d 853 (1987) (factually almost on all fours with this case on the jury issue), it was considered relevant in determining whether a prima facie case of prejudice existed. All factors considered, the requisite prima facie case was not made out.

to be the focus of appellant's argument. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), permits the use of peremptory challenges to enable prosecutors and defense counsel to strike jurors who are more partial to the other side thereby removing extremes of partiality on both sides. Recently, the United States Supreme Court in *Daniel Holland v. Illinois,* —— U.S. ——, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), held that a fair cross-section principle may not be read into the sixth amendment as a requirement for petit jury selection, as is the case with venire selection. *See Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). To do so would be to emasculate the device of peremptory challenges. *See Batson* and *Swain, supra.*

Stern's second issue is a claim of ineffectiveness of counsel for trial counsel's failure to request a jury charge on "unreasonable belief" voluntary manslaughter, 18 Pa.C.S. § 2503(b).

> In reviewing the stewardship of counsel, a court must first determine whether the underlying claim is of arguable merit. If so, it must then determine whether counsel's conduct was reasonably calculated to serve the interests of his client. Finally, the defendant must demonstrate that he was prejudiced by counsel's ineffectiveness. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

*Commonwealth v. Gibbs,* 387 Pa.Super. 181, 189, 563 A.2d 1244, 1248 (1989).

We find the underlying claim is without merit as the court did give instructions concerning unreasonable belief voluntary manslaughter. The statute reads as follows:

> **(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this

title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S. § 2503(b).

In his charge to the jury, the trial judge said, "Voluntary manslaughter also exists where at the time of the killing, the defendant believed the circumstances to be such that if they existed would have justified the killing but his belief was unreasonable" (N.T. 6/8/88, pp. 40–41).

Since the trial court gave the charge Stern claims his counsel failed to request, his argument is without merit.

██ Finally, appellant argues he is entitled to a new trial due to prosecutorial misconduct and cites numerous instances of allegedly improper remarks and questions.[5] The trial court denied a new trial, finding there was no reversible error since cautionary instructions were given where needed.

The test we must use to determine whether a new trial is warranted is the "unavoidable prejudice test."

> [W]here the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. The language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." The effect of such remarks depends upon the atmosphere of the trial and the the proper action to be taken is within the discretion of the trial court.

*Commonwealth v. Bullock,* 384 Pa.Super. 269, 279, 558 A.2d 535, 539–40 (1989), *citing Commonwealth v. Johnson,* 516 Pa. 527, 532–33, 533 A.2d 994, 997 (1987) (citations omitted).

5. Our discussion as to this issue is identical to that in our unpublished memorandum in *Commonwealth v. Johnson* (No. 03237 Philadelphia, 1988, J–A01019/90).

162

The focus of appellant's argument is on the prosecutor's references to drugs and gang violence and appellant's involvement therein. The prosecutor's comments were permissible, however, as they revolved around the evidence showing intent and motive for the murder.

In a similar case, *Commonwealth v. Ramos*, 366 Pa.Super. 624, 532 A.2d 22 (1987), we found that evidence of drug dealing, fighting and shooting was properly admitted at trial to establish intent and motive. The only connection the victim in the instant case had with appellant was through drug dealing and gang activity; therefore, the prosecutor could introduce this evidence to support his claim that appellant had a motive for shooting Clark, namely, Clark's failure to handle his drug courier duties in the fashion Johnson required.

For the above stated reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

DEL SOLE, J., dissents.

DEL SOLE, Judge, dissenting.

I join the Majority's Opinion in its analysis with regard to the three issues discussed, namely, racial discrimination in jury selection, the failure to include an "unreasonable belief" voluntary manslaughter charge and its application of *Commonwealth v. Ramos*, 366 Pa.Super. 624, 532 A.2d 22 (1987) to permit evidence of drug dealing at the trial to establish intent and motive.

However, I cannot accept the Majority's conclusion that the actions of the prosecutor in this case did not amount to prosecutorial misconduct. Having reviewed the record in this matter, I find that it is replete with actions by the prosecuting attorney that are unprofessional, uncivil and amount to misconduct. One example deals with the testimony of Mr. Howell, a witness who stated that he saw an

individual armed with a .38 revolver in a bar located about seven blocks from the scene of the shooting. Following direct examination the Assistant District Attorney asked one question and this is demonstrated as follows:

Q. (by A.D.A.) How many other bartenders in this city does Mr. Johnson have in his pocket?

Mr. Medway: Objection.

Ms. Smarro: Objection. Move for mistrial.

Mr. Medway: Move to strike and move for mistrial.

Mr. Compolongo: I have no questions of this witness.

The Court: Don't get excited. Disregard the last comment by the Assistant District Attorney. That stricken from the record. You are excused. Thank you.

Mr. Medway: Excuse me, Your Honor, may we see you at side bar, please?

(Sidebar discussion held on the record as follows:)

Ms. Smarro: Judge, I think the case law is in my favor when I move for a mistrial. I have the cases over there on my desk.

The Court: Mistrial is denied. I have stricken it from the record. I told them to disregard it.

. . . . .

The Court: I will not declare a mistrial. I will instruct the jury to disregard it. Okay?

(Sidebar discussion concluded at this time.)

(N.T. 6/6/88, 89–91)

This attempt by the prosecutor was to impinge the testimony of a crucial defense witness by propounding what purported to be a question, knowing that the question was improper and he did not even seek to justify the question asked. A review of this record shows that the prosecutor in this case engaged in a course of conduct that is not designed to seek the truth but rather to prejudice the jurors.

Admittedly, the trial court gave cautionary instructions, the trial court was required to do that throughout the trial because of the actions of the prosecutor and one of the defense attorneys. It is obvious that the trial judge in this case sought to get this matter concluded and, in my view, excused actions which should not be tolerated in a court-room. Instructive on this issue is the Commonwealth's brief on this point dealing with the witness, Mr. Howell. The Commonwealth argues:

> There was no prejudice resulting from the question since an objection to it was sustained, the question was stricken from the record, and the jury was twice instructed at length to disregard it because it was not evidence and cannot be considered in way.

(Commonwealth Brief, p. 29)

Interestingly, the Commonwealth in its brief cannot justi-fy the asking of the question by the prosecutor. It merely seeks to excuse the prosecutor's action by saying that the court acted to strike the prejudicial question. This is not the way cases should be tried and, when one reads the entire record in this case, one cannot avoid the inescapable conclusion that the prosecutor's action was extremely preju-dicial not a search for truth and should no be excused because the trial judge instructed the jury to disregard what the prosecutor said. I would vacate the judgment of sentence and remand the case for new trial based on prosecutorial misconduct.