689 A.2d 912

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Calvin GARRETT, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 20, 1996.

Filed Jan. 23, 1997.

Reargument Denied March 25, 1997.

62

Vladimir Zdrok, Philadelphia, for appellant.

Teresa E. Kibelstis, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before McEWEN, P.J., and POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge.

In this appeal, appellant contends that the Constitution does not prohibit a criminal defendant from discriminating on the basis of race in the exercise of his peremptory challenges. We disagree with this contention, and, therefore, we affirm.

The record discloses the following pertinent facts and procedural history: On December 10, 1993, appellant, who was black, was convicted on the charges of robbery, aggravated assault, and criminal conspiracy. On direct appeal, this Court reversed the judgment of sentence and remanded for a new trial because the trial court failed to give a "no adverse inference" instruction. *Commonwealth v. Garrett*, 445 Pa.Super. 648, 665 A.2d 1299 (1995).

On November 6, 1995, jury selection began for appellant's second trial. The prosecution and the defense were each permitted seven peremptory challenges. The first round of voir dire consisted of twelve venirepersons. Four of these venirepersons (one, four, ten and eleven) were white. Defense counsel used peremptory challenges to remove venirepersons one, four and ten. At this point, the prosecutor objected to

defense counsel's challenge to venireperson ten and stated that she believed that defense counsel was exercising his peremptory challenges to exclude white venirepersons from the jury panel in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[1] The trial court determined that the Commonwealth established a prima facie case of racial discrimination and directed defense counsel to state his reasons for the peremptory challenges. Defense counsel so complied. The trial court then permitted the peremptory challenges to stand but indicated that defense counsel was "getting into dangerous ground." N.T. 11/6/1995 p. 79. Immediately thereafter, defense counsel used a peremptory challenge to remove venireperson eleven. The prosecutor renewed her *Batson* challenge. Defense counsel stated his reasons for striking potential juror eleven, and the trial court permitted the peremptory challenge to stand.

A second set of potential jurors was then seated for voir dire. Defense counsel used a peremptory challenge to remove venireperson sixteen, who was white. The prosecutor renewed her *Batson* challenge. The trial court instructed defense counsel to explain the basis for removing potential juror sixteen. Defense counsel stated that he felt that the juror was not being candid with the court and that he did not like the juror's demeanor. The trial court stated that "there was really no 'honest to goodness' justification or no legal reason" for striking the juror. N.T. 11/6/1995 pp. 110–114. However, the trial court informed defense counsel that counsel would be given some leeway and that the trial court would not overturn the challenge as to venireperson sixteen at that point. Defense counsel then used a peremptory challenge to remove venireperson eighteen, who was white. Again, the prosecutor renewed her *Batson* challenge, and the trial court instructed defense counsel to state his reasons for excluding the potential juror. Defense counsel stated that he exercised a peremptory challenge against juror eighteen because the juror had been

1. In *Batson,* the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits prosecutors from challenging potential jurors on account of their race.

robbed by two black males and would be biased in the present case because the defendant was black.

After defense counsel offered his reason for striking juror eighteen, the prosecutor renewed her challenge as to the striking of juror sixteen. Defense counsel was given another opportunity to explain the reasons for striking juror sixteen. Defense counsel indicated that he just "didn't like the man" and that his client did not like the juror's answers. Defense counsel then offered to "take the next white juror." N.T. 11/6/1995 p. 116. The trial court determined that defense counsel's earlier explanation as to the removal of juror sixteen was pretextual and found that defense counsel improperly struck juror sixteen on the basis of race. The trial court then informed defense counsel that he could either accept juror sixteen or the whole panel would be dismissed, with costs charged to the defendant. Juror sixteen was then reinstated. The final petit jury consisted of four white jurors, eight black jurors, as well as two white alternates. Defense counsel used six of his seven peremptory challenges. He used five of his challenges to remove prospective white jurors and one of his challenges to remove a prospective black juror. Following his second trial, appellant was convicted again of robbery, aggravated assault, and criminal conspiracy. He was sentenced to seven to twenty years incarceration. This appeal followed.

■ Appellant's first contention is that *Batson* is inapplicable to this case because the Constitution does not prohibit a criminal defendant from engaging in purposeful racial discrimination in the exercise of peremptory challenges.[2] We disagree.

For more than a century, the United States Supreme Court has consistently and repeatedly held that racial discrimination by the prosecutor in jury selection offends the Equal Protection Clause. *See, e.g., Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880); *Batson, supra.* In *Georgia v.*

---

**2.** We note that appellant's argument that defense counsel is permitted to engage in racial discrimination in the exercise of peremptory challenges is based on the United States Constitution. Appellant does not challenge the validity of this issue under the Pennsylvania Constitution.

*McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the Supreme Court extended its holding and determined that the Constitution also prohibits a criminal defendant from engaging in purposeful racial discrimination in the exercise of peremptory challenges. Clearly, appellant's contention to the contrary is meritless, and, therefore, the trial court did not err in finding that *Batson* and its progeny were applicable to this case.

▮ Appellant also contends that *Batson* and its progeny are inapplicable because there was no "racial animus or controversy" in this case. The essence of appellant's argument is that racial discrimination in the selection of jurors is a concern only if the defendant and the victims are of different races. Therefore, since he and the victims were of the same race in this case, appellant argues that the trial court was precluded from engaging in a *Batson* analysis. We disagree.[3]

In *Commonwealth v. Jackson,* 386 Pa.Super. 29, 562 A.2d 338 (1989) (plurality Opinion by Beck, J.), the prosecutor

3. In developing his argument that *Batson* is inapplicable because he and the victims were black, appellant contends that "[i]t is absurd that the prosecution now contends that white venirepersons have a constitutional right to sit on a jury when the defendant is black." Appellant Brief p. 13. We reject this contention and direct appellant to *McCollum, supra,* and *Batson, supra,* where the United States Supreme Court specifically concluded that *any* racial discrimination in the jury selection process violates the rights of the excluded jurors and fundamentally undermines the integrity of the judicial process. As the Supreme Court has explained numerous times, the discriminatory use of peremptory challenges in the jury selection process, whether based on race or gender, causes harm to the litigants, the community and the individual jurors who are wrongfully excluded from participation in the judicial process. *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Commonwealth v. Tourscher,* 453 Pa.Super. 1, 682 A.2d 1275 (1996). If any identifiable group is excluded on the basis of race or other reasons not related to a perception that the individual member would be unable to perform adequately the functions and duties required of a juror in the case presented, impermissible discrimination has occurred. *J.E.B.,* 511 U.S. at 135, 114 S.Ct. at 1427. Appellant's argument ignores the very essence of the United States Supreme Court's rulings that not only do the litigants have the right to a jury selection process free of discrimination, but prospective jurors have a right to participate in this essential civic duty with confidence that he or she was evaluated by virtue of ability to serve, regardless of race.... *J.E.B.,* 511 U.S. at 129, 114 S.Ct. at 1421–22.

argued that it could not be found that he engaged in racial discrimination since the defendant and the prosecutor's witnesses (including the victim) were of the same race. The Honorable Phyllis W. Beck indicated that while "the potential for misuse of peremptory challenges is greatest when a defendant is accused of attacking an individual of a different race, ... this does not mean that the absence of interracial conflict guarantees that peremptory challenges will be exercised for proper reasons." *Jackson,* 562 A.2d at 345 (citations omitted). Judge Beck then expressly stated that "the fact that a defendant is a member of the same racial group as the Commonwealth's witnesses, including the victim, is in no way inconsistent with a finding of a prima facie case [of discrimination]." *Id.* at 346.

That sound reasoning in *Jackson* was accepted by a panel of this Court in *Commonwealth v. Stern,* 393 Pa.Super. 152, 573 A.2d 1132 (1990). In *Stern,* we held that "the fact that the defendant and the victims are of the same race does not preclude an attempt to establish a prima facie case." *Id.* 573 A.2d at 1136 n. 4. Rather, the race of the defendant and the race of the victims are factors to be considered in determining whether a prima facie case under *Batson* has been established. *Stern, supra. See Commonwealth v. Weaver,* 390 Pa.Super. 434, 568 A.2d 1252 (1989) (defendant and victim were both black; this Court found that a prima facie case of discrimination was established). Clearly, appellant's contention that the trial court was precluded from applying *Batson* to this case because he and the victims were of the same race is meritless.

■ Having determined that the principles enunciated under *Batson* and its progeny are applicable, we must determine whether the trial court erred in finding that defense counsel's peremptory challenge as to juror sixteen violated the Constitution. In deciding this issue, we must use a three-part analysis. First, the party objecting to the peremptory challenge must make a prima facie showing that the proponent of the peremptory challenge seeks to exclude a prospective juror based on race. *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Second, if a prima facie

showing has been made, the burden shifts to the proponent to articulate a race-neutral explanation for excluding the juror in question. *Id.* Third, if the proponent demonstrates a race-neutral explanation, then the trial court must determine whether the objecting party has proved that the peremptory challenge is based on purposeful racial discrimination. *Id.*

In regard to the first prong of the aforementioned test, appellant does not dispute that the prosecutor made a prima facie showing of intentional discrimination. We find that it is unnecessary to determine whether the prosecutor established a prima facie showing of discrimination since defense counsel offered an explanation for his peremptory challenge. "Once the [proponent of the challenge] has offered an explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the [party objecting] made a prima facie showing becomes moot." *Hernandez,* 500 U.S. at 359, 111 S.Ct. at 1866.[4]

In regard to the second and third steps of the aforementioned test, appellant contends that the reasons given by defense counsel for striking juror sixteen were race-neutral and that the prosecutor failed to carry her burden of proving purposeful discrimination. In evaluating the racial neutrality of defense counsel's explanation, we must determine whether, assuming challenge violates the Equal Protection Clause as a matter of law. *Hernandez, supra.* A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. *Id.* "At this step of the inquiry, the issue is the facial validity of the attorney's explanation. Unless a discriminatory intent is in-

---

4. We note that it is clear that the prosecutor established a prima facie case of discrimination. Five of the six peremptory challenges exercised by defense counsel were used to exclude white venirepersons from the petit jury. "The inference which arises from this course of conduct, ... sufficiently satisfies the prima facie requirement to suggest that [defense counsel] used his peremptory challenges in a discriminatory manner." *Commonwealth v. Correa,* 423 Pa.Super. 57, 620 A.2d 497, 501 (1993) (holding that prima facie case of discrimination was established where prosecutor used five of her six peremptory challenges to exclude black venirepersons).

herent in the attorney's explanation, the reason offered will be deemed racially neutral." *Hernandez*, 500 U.S. at 360, 111 S.Ct. at 1866 (citations omitted).

■ The reasons offered by defense counsel for striking juror sixteen appear in the trial court's opinion as follows:

The reasons offered are varied and scattered throughout the record. When first questioned by the court, defense counsel indicated that he felt that prospective juror sixteen was not being candid. Then defense counsel stated that he didn't like the prospective juror's demeanor. When asked to explain, counsel stated that he felt that the juror's response, wherein he indicated that to the best of his knowledge no one in his family had any contact with the criminal justice system, was disingenuous. Counsel emphasized that he did not strike the juror because of race.... Counsel also indicated that 'he just didn't like the man,' and that his client did not like his answers.

Trial Court Opinion dated 6/21/1996 pp. 7–8.

■ We find that the reasons offered by defense counsel in regard to striking juror sixteen were facially race-neutral. *See Commonwealth v. Smulsky*, 415 Pa.Super. 461, 609 A.2d 843 (1992) (attorney's belief that potential juror has been disingenuous is a legitimate, race-neutral reason); *Jackson, supra* (attorney's impression of a prospective juror's demeanor is a legitimate, race-neutral reason). However, we agree with the trial court's conclusion that the reasons offered by defense counsel were pretextual, and that "they were intended to disguise counsel's underlying racial motivation." Trial Court Opinion dated 6/21/1996 p. 10.

■ An explanation which at first blush appears to be clear, specific and legitimate may be exposed as a pretext for racial discrimination when considered in the light of the entire voir dire proceeding. *Stern, supra.* "Whether reasons given by [defense counsel] are bona fide and sufficient to rebut a prima facie showing of discrimination in the exercise of a peremptory challenge must necessarily be vested in the sound discretion of the trial court." *Commonwealth v. Lloyd*, 376

Pa.Super. 188, 545 A.2d 890, 894 (1988). The trial court can detect in a way not necessarily available to a reviewing court any discriminatory patterns and whether racially neutral considerations have been applied equally to all members of a panel of prospective jurors. *Lloyd, supra.* Therefore, "the primary responsibility for assessing the genuineness of [defense counsel's] reasons is vested in the trial court, and that court's findings must be given due deference by a reviewing court. Only if those findings are unsupported by the record or appear to be unreasonable or arbitrary in the face of clear evidence will the trial court's findings be disturbed." *Id.* 545 A.2d at 895.

Here, the trial court stated numerous reasons for finding defense counsel's explanation pretextual. First, the trial court noted that the overall employment of defense counsel's peremptory challenges operated to eliminate potential white jurors. As discussed previously, five of the six challenges exercised by defense counsel eliminated white jurors.

Second, the trial court noted that defense counsel used most of his peremptory challenges to strike white venirepersons with backgrounds similar to the black jurors who defense counsel ultimately selected. For example, defense counsel informed the trial court that he struck venireperson one, who was white, because she sat on a jury previously and had a nephew who was a police officer. However, defense counsel accepted juror nineteen, who was black, even though he sat on a jury previously and had two cousins who were police officers. He also accepted jurors thirteen, nine, twelve, and twenty, all of whom were black, even though they all sat on juries previously. Moreover, defense counsel informed the trial court that he struck venireperson eighteen, who was white, because he had been the victim of a robbery twenty years ago. However, counsel accepted juror twenty-two, who was black, even though he had been the victim of an armed robbery six years ago. In short, a review of voir dire discloses that defense counsel accepted black venirepersons who had the same deficiencies as the white venirepersons he struck. The presence of black jurors who possessed the same characteris-

tics indicates that defense counsel's reasons for striking white venirepersons was pretextual. *See Jones v. Ryan,* 987 F.2d 960 (3rd Cir.1993).

Third, the trial court noted that when questioned about the reasons for striking juror eighteen, who was white, defense counsel failed to articulate a race-neutral reason for the strike. Specifically, counsel stated that the venireperson was eliminated because he had been robbed by two black males, and, since juror eighteen was white, he would probably be biased against a black defendant. N.T. 11/6/1995 p. 115. Such a justification clearly shows that counsel relied on race in eliminating juror eighteen and makes suspect his other peremptory challenges.

Finally, the trial court stated that it did not find credible defense counsel's explanations. Defense counsel's justifications for striking juror sixteen rested solely on his intuitive feelings. Specifically, counsel indicated that he felt that the juror was not being candid, that he did not like the juror's demeanor, and that he "just did not like the man." The trial court, who was also able to examine the demeanor of the juror and defense counsel, found these assertions incredible. We will not reverse this finding on appeal. *Lloyd, supra.*[5]

Considering the entire voir dire proceeding, we find that the trial court did not err in determining that defense counsel's reasons for eliminating juror sixteen were pretextual and that the prosecutor proved purposeful discrimination. Accordingly, we find that the trial court did not err in reinstating juror sixteen.

Judgment of sentence affirmed.

McEWEN, P.J., concurs in the result.

[5] We note that defense counsel's complete voir dire of juror sixteen was as follows:

Q: Good afternoon, Sir.
A: Good afternoon.
Q: Have you ever had any contact at all with the criminal justice system?
A: None whatsoever.
Q: Anyone in your family?
A: Not to my knowledge.

N.T. 11/6/1995 p. 96.