J-A19037-23

2023 PA Super 263

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AHMAD NASIR | : | |
| | : | |
| Appellant | : | No. 925 EDA 2022 |

Appeal from the Judgment of Sentence Entered March 8, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006797-2019


BEFORE:  BOWES, J., STABILE, J., and PELLEGRINI, J.[*]

DISSENTING OPINION BY PELLEGRINI, J.:        **FILED DECEMBER 12, 2023**

*In the eyes of the Constitution, one racially discriminatory peremptory strike is one too many. . . .  Equal justice under law requires a criminal trial free of racial discrimination in the jury selection process*.

**Flowers v. Mississippi**, 139 S. Ct. 2228, 2241 (2019).

The Supreme Court's decision in **Batson v. Kentucky,** 476 U.S. 79 (U.S. 1986), outlawed consideration of racially discriminatory factors in the prosecution's exercise of its peremptory challenges[1] in empaneling a jury. When challenged in its use of a peremptory challenge, the prosecution must

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Counsel can strike a potential juror "where cause exists indicating that the juror cannot follow the law or possesses some bias toward the Commonwealth or defendant, or arbitrarily by peremptory challenge."  **Commonwealth v. Chmiel**, 889 A.2d 501, 519 (Pa. 2005), *cert. denied*, 549 U.S. 548 (2006) (citation omitted).

provide a race neutral reason for that challenge. In this case, Nasir contends that the Commonwealth struck prospective black jurors without providing a race neutral reason for doing so. The Commonwealth agrees with that assessment and urges that we vacate the judgment and order a new trial.

What makes this case different from other **Batson** challenges is that the Commonwealth did not exercise its peremptory challenges in an attempt to strike all or most black persons from the jury but, it is alleged, to limit the number of black jurors on that jury panel. Because I agree with the Commonwealth that it did not present a legitimate, non-discriminatory reason for striking prospective black jurors, and "one racially discriminatory strike is one too many," I respectfully dissent.

## I.

Before addressing the merits, a short summary of how a **Batson** violation is made out and how both trial courts and appellate courts are to make that determination is needed.

## A.

"In **Batson**, the [Supreme Court of the United States] held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution." **Commonwealth v. Scott**, 212 A.3d 1094, 1105 (Pa. Super. 2019) (citation and brackets omitted).

> [T]he **Batson** Court did not accept the argument that race-based
> peremptories are permissible because both the prosecution and

defense could employ them in any individual case and in essence balance things out. Under the Equal Protection Clause, the Court stressed, even a single instance of race discrimination against a prospective juror is impermissible.

*Flowers v. Mississippi*, 139 S.Ct. at 2242.

*Batson* does not just protect the right of a defendant that no one is excluded for racial reasons but also protects a citizen's right not to be excluded from a jury because of race. The Supreme Court explained this in *Powers v. Ohio*, 111 S.Ct. 1364 (1991), when it rejected a claim that a white defendant did not have standing to object to the exclusion of blacks from the jury. It found that discriminatory use of peremptory challenges by the prosecution "causes a criminal defendant cognizable injury, and the defendant has a concrete interest in challenging the practice." *Powers*, 111 S.Ct. at 1371; *see also Allen v. Hardy*, 106 S.Ct. 2878, 2880 (1986) (recognizing a defendant's interest in "neutral jury selection procedures"). It went on to hold that while a citizen does not have the right to sit on any particular jury, a citizen is entitled not to be excluded based on his race alone because *Batson* also "recognized that a prosecutor's discriminatory use of peremptory challenges harms the excluded jurors and the community at large" by denying them the right to participate in the administration of justice. *Powers*, 111 S.Ct. at 1368 (citing *Batson*, 106 S.Ct. at 1718).

**B.**

If a defendant raises a *Batson* challenge during *voir dire*, a shifting burden analysis is used:

First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

**Scott**, 212 A.3d at 1105-06 (citation omitted).

To meet the first step, the defendant, in order to establish a *prima facie* case of purpose full discrimination, must show:

[T]hat he is a member of a cognizable racial group, that the prosecutor exercised a peremptory challenge or challenges to remove from the venire members of the defendant's race; and that other relevant circumstances combine to raise an inference that the prosecutor removed the juror(s) for racial reasons.

**Commonwealth v. Edwards**, 177 A.3d 963, 972 (Pa. Super. 2018). **See Scott**, 212 A.3d at 1105-06.

Once a *prima facie* case is established, in the second step of the **Batson** framework, a court considers "the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." **Hernandez**, 111 S. Ct. at 1866. In the third step, the trial court decides the ultimate question of discriminatory intent. This prong:

represents a finding of fact of the sort accorded great deference on appeal and will not be overturned unless clearly erroneous. Such great deference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility determinations. Moreover, there will seldom be much evidence on the decisive question of whether the race-neutral explanation for a peremptory

- 4 -

challenge should be believed; the best evidence often will be the demeanor of the prosecutor who exercises the challenge.

*Commonwealth v. Williams*, 980 A.2d 510, 531 (Pa. 2009); *Scott*, 212 A.3d at 1106. In making this determination, the trial court should ask whether an objective observer could view race or ethnicity as a factor in the use of the peremptory strike.

More recently, in *Flowers*, the United States Supreme Court gave additional guidance regarding the evidentiary and procedural issues raised by *Batson*. First, though not an exhaustive list, the Court laid out five types of specific evidence a defendant may present to show that a prosecutor's strikes were racially discriminatory:

> [S]tatistical evidence about the prosecutor's use of peremptory strikes against black prospective jurors as compared to white prospective jurors in the case; evidence of a prosecutor's disparate questioning and investigation of black and white prospective jurors in the case; side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not struck in the case; a prosecutor's misrepresentations of the record when defending the strikes during the *Batson* hearing; relevant history of the State's peremptory strikes in past cases; or other relevant circumstances that bear upon the issue of racial discrimination.

*Flowers*, 139 S. Ct. at 2243 (paragraph formatting provided; citation omitted).

*Flowers* also reiterated that trial judges are responsible for enforcing *Batson*. "America's trial judges operate at the front lines of American justice. In criminal trials, trial judges possess the primary responsibility to enforce *Batson* and prevent racial discrimination from seeping into the jury selection."

*Id.* From the foregoing, it is clear that the trial court must independently confirm the basis of the explanation by affirmatively finding that any other jurors with similar characteristics to the challenged juror were struck; determine that the Commonwealth's explanation based on characterizations of a group which includes a juror be shown to be specifically true of the challenged juror; and find that an explanation is rational, meaningful and related to the particular case.

### C.

The Supreme Court went on to discuss the role of appellate courts in the analysis of a *Batson* claim. An appellate court will also go through a burden-shifting analysis but must do so using only the paper record. *See id.* Given that the analysis largely concerns the credibility of the prosecutor's reasons for the peremptory strikes, and many of these reasons concern a prospective juror's demeanor, the trial court's *Batson* determination is normally given a high level of deference. *See id.*

Deference does not mean that the trial court's findings are preclusive unless an abuse of discretion is made out. An appellate court in conducting its review, while giving the trial court due deference to its factual findings, makes its own "totality of the circumstances" analysis to determine whether the trial court erred in not finding a violation. "The totality of the circumstances approach … permits each act to be taken into account without resorting to formal and dispositive labels. By dispensing with the difficulty of

producing a yes-or-no answer to questions that are often better answered in shades and degrees, the [] inquiry often can make judicial decision making easier rather than more onerous." **Withrow v. Williams**, 113 S. Ct. 1745, 1764 (1993) (Justice O'Connor concurring).

Now to the facts in this case.

## II.

While the Majority recounted a detailed description of what occurred during jury selection, to focus on the **Batson** violation, a short summary of the facts is required.

At the start of jury selection, the trial court advised the *venire* that they were being selected for a criminal trial involving a murder allegedly committed by Nasir. Based on the responses indicated on their juror information questionnaire, the court examined each of the 45 prospective jurors individually to determine if they could serve on the jury fairly and impartially. The questionnaires included space for biological information, including race, and 16 "yes or no" questions. The questions included, in pertinent part:

Have you or anyone close to you ever been a victim of a crime?

Have you or anyone close to you ever been charged with or arrested for a crime, other than a traffic violation?

Have you or anyone close to you ever been an eyewitness to a crime, whether or not it ever came to Court?

Both the Commonwealth and the defense were awarded seven peremptory strikes. *Voir dire* proceeded without incident until the

Commonwealth exercised its fifth peremptory strike against prospective juror number 22. Nine jurors had been seated on the jury. Of the nine jurors seated, five were black and four were white. The four peremptory strikes exercised by the prosecutor until that point included three against prospective black jurors and one against a prospective white juror. (**See** N.T., 3/01/22, 124-128).[2]

Juror number 22 was a young black male with prior jury service and he did not check any boxes on his juror questionnaire (*i.e.*, he did not check that he had been the victim of a crime or that he knew anyone who had been), and indicated that he could be fair and impartial if empaneled. (**See id.** at 123-25). Defense counsel raised a **Batson** challenge to the Commonwealth's

_____

[2] The Commonwealth exercised its seven peremptory challenges. Of those not challenged are:

- Prospective juror number 4, a white individual who had witnessed a crime;

- Prospective juror number 6, a black individual who answered someone close to her had been charged with a crime;

- Prospective juror number 14, a black individual who indicated that a close friend had been the victim of a crime and a family member had witnessed a murder; and

- Prospective juror number 30, a black individual who had a family member who was illegally arrested as part of the 39th District Corruption Scandal in Philadelphia.

N.T. Trial, 3/01/22, at 41-57, 91-99, 123-25.

peremptory strike, and the court asked the Commonwealth why it struck the prospective juror. The Commonwealth stated that it struck him because he had no experience with the criminal system and had barely engaged in dialogue with the court.

While discussing prospective juror number 22, defense counsel made a retroactive **Batson** challenge to the Commonwealth's previous peremptory strike of prospective juror number 15, a black woman who also did not check any boxes on the juror questionnaire. Counsel argued that the Commonwealth had no legitimate reason to strike her. (**See id.** at 125-30). When the court asked the Commonwealth why it struck the prospective jurors, the Commonwealth explained, with respect to juror number 22:

> The reason was there was no experience. There was absolutely— he wrote mechanic down on the side, has no experience, never knew anybody that was the victim of a crime, never knew anything. There was nothing to ask him. You simply said to him, sir, you marked off this; unlike the other people, where there was some dialogue, and you went on for a period of time.

(**Id.** at 132).

> With respect to juror number 15, the Commonwealth stated:

> Same thing, Your Honor; just recently got here from California, states she has no—no one that she's ever known, nothing, no crimes, no one's ever been a victim of any crimes or anything like that. She just been simply in the hospitality thing. Didn't really think much of it on what she does or—[.]

(**Id.** at 133).

Defense counsel complained that the prosecutor's reason to strike the black jurors showed a discriminatory intent because he had accepted similarly

situated prospective white jurors who had not answered "yes" to any of the questions on the questionnaire about crime.[3]

The trial court denied the **Batson** challenges to prospective juror numbers 15 and 22, stating that the Commonwealth had the right to issue peremptory strikes against anyone as long as they were not issued for reasons of gender or race. It held that the reasons offered by the Commonwealth were race-neutral and that either party could decide that they did not want "certain types of people without background and experience" to serve on the jury, and that there had been no pattern in the Commonwealth's strikes that established a **Batson** violation. (**Id.** at 130-33, 135-42, 152-60).

The Commonwealth exercised its sixth strike against prospective juror number 24 who was a black woman who stated that she had previously served on a criminal and civil jury. She did not, however, answer "yes" to any of the other questions on the questionnaire. The Commonwealth's initial reason for striking prospective juror number 24 was that she had no experience with crimes. Defense counsel noted that the Commonwealth had previously accepted prospective white juror number 20, who was equally inexperienced. When the court asked whether there were similarly situated white jurors accepted by the Commonwealth, the prosecutor stated, "If your honor thinks

_____

[3] The Commonwealth accepted prospective white juror numbers 7, 11, 20 and 21, even though they lacked the exact same experience.

it's too close to the line, I don't have a problem accepting." The Commonwealth then accepted prospective juror number 24. (N.T. 3/1/22, 136, 138-142).

As *voir dire* continued, the Commonwealth accepted prospective juror number 31, a white male who indicated that he had previously served as a juror, but, like stricken black prospective jurors, had not answered "yes" to any of the questions regarding his personal experience with the criminal system. When defense counsel objected that this evidenced discriminatory intent, the prosecutor responded that, "I accepted him based on the fact that we have gone through this, and Your Honor asked me about a prior juror just three strikes before, and I said, okay, I'll accept that person." The Commonwealth then stated, "I'm perfectly willing to strike him because he doesn't have any background." The court determined that the Commonwealth's decision to ultimately strike the juror cured the issue. (***Id.*** at 160-161, 163-166).

The seated jury consisted of seven black jurors and five white jurors. The trial court essentially found that since there were seven black jurors and that the Commonwealth used its peremptory challenges to strike both black and white jurors, that a ***Batson*** violation was not made out. It stated:

> After further consideration of the totality of the circumstances, this court again concludes that the Commonwealth's explanations for its peremptory strikes were legitimately race-neutral and that [Nasir]'s trial counsel failed to prove purposeful discrimination. At the time the ***Batson*** challenge was made, the Commonwealth had exercised five (5)

peremptory strikes against prospective jurors and found thirteen (13) prospective jurors acceptable. Of the thirteen (13) prospective jurors accepted by the Commonwealth, six (6) indicated their race as "Black", six (6) indicated their race as "White", and one (1) did not indicate their race on the juror information questionnaire. Of the five (5) prospective jurors which the Commonwealth exercised a peremptory strike against, four (4) indicated their race as "Black" and one (1) indicated their race as "White." The Commonwealth thus found prospective jurors of multiple races acceptable and issued peremptory strikes against prospective jurors of different races.

At the time [Nasir]'s trial counsel made his **Batson** challenge, this court had examined twenty-two (22) prospective jurors. Two (2) of those prospective jurors were excused for hardship and the Commonwealth did not have the opportunity to accept or strike two (2) other prospective jurors. Of the eighteen (18) prospective jurors the Commonwealth had an opportunity to accept or strike, ten (10) indicated their race as "Black." The Commonwealth accepted six (6) of these prospective jurors, or 60% of all prospective jurors who indicated their race as "Black," and exercised peremptory strikes against four (4) of these prospective jurors, or 40% of all prospective jurors who indicated their race as "Black." The Commonwealth's choices therefore did not reflect any pattern of purposeful discrimination during jury selection.

Accordingly, this court relied on factual findings well-supported by the record when it correctly applied the three-step **Batson** framework to [Nasir]'s jury selection process. … (Trial Ct. Op., at 42).

(Trial Ct. Op., at 42) (some capitalization omitted).

## III.

## A.

The issue in this appeal is whether the Commonwealth violated the Equal Protection Clause of the United States Constitution when it struck prospective black juror numbers 15 and 22. This issue is resolved by

- 12 -

application of the **Batson** three-part test. The first part of that test is for the defendant to establish a *prima facie* case. A *prima facie* case is made out under **Batson** by establishing that the Commonwealth purposely exercised peremptory strikes to remove from the jury a member(s) of a cognizable racial or gender group to which the defendant belongs. This is done by examining the relevant facts and any other relevant circumstances that raise an inference that the strikes were purposefully used to exclude jurors on account of their race or gender. **See Commonwealth v. Uderra**, 862 A.2d 74, 84 (Pa. 2004); **Scott**, 212 A.3d at 1105-06; **Edwards**, 177 A.3d at 972. Put another way, a *prima facie* case is made by showing that "the totality of relevant facts gives rise to an inference of a discriminatory purpose." **Batson**, 476 U.S. at 93-94. A *prima facie* showing need not be by a "more likely than not" standard. Instead, the defendant must only produce sufficient evidence from which the trial judge can draw an inference that discrimination occurred. **See Johnson v. California**, 125 S.Ct. 2410, 2413 (2005).

The trial court found that Nasir failed to make out a *prima facie* showing that the Commonwealth strike was raced based.[4] The Majority offered no

_____

[4] At *voir dire*, the trial court did not make an express finding about the first prong before making its ruling, although in its opinion, it maintains that defense counsel failed to establish a *prima facie* showing of discrimination. (**See** Trial Ct. Op., at 40). However, this is moot because the court proceeded to the second and third prongs of the test. **See Hernandez v. New York**, 111 S. Ct. 1859, 1866 (1991) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the
*(Footnote Continued Next Page)*

opinion as to whether Nasir made out a *prima facie* claim. Essentially because the "the law is not entirely consistent as to whether the trial court may proceed to a second step **Batson** analysis when a defendant had failed to make out a *prima facie* case," it opted "to take the safer course of action by basing our ruling upon an examination of the second and third prongs." Majority, at 31 n.7 (citing **Commonwealth v. Murray** 248 A.3d 557, 570 (Pa. Super. 2021)).

I would go further and find that Nasir met the first prong because he established that he is black and four of the Commonwealth's five peremptory challenges at the time the **Batson** challenge was raised were black prospective jurors. Furthermore, the Commonwealth initially struck a prospective black juror, but then elected to accept her after defense counsel noted that the prosecutor was being inconsistent since he accepted prospective white jurors who responded to the questionnaire sheet in the same fashion as several black jurors whom he had stricken, raising an inference that he removed the jurors for racial reasons. (**See** N.T., 3/01/22, at 123-30). **See Scott**, 212 A.3d at 1105-06.

**B.**

The second step in the **Batson** analysis is the determination of whether the Commonwealth provided race-neutral explanations for striking the

_____

ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot.").

prospective jurors. *See Commonwealth v. Watkins*, 108 A.3d 692, 708 (Pa. 2014). As our Supreme Court explained:

> The second prong of the *Batson* test, involving the prosecution's obligation to come forward with a race-neutral explanation of the challenges once a *prima facie* case is proven, does not demand an explanation that is persuasive, or even plausible. Rather, the issue at that stage is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Commonwealth v. Harris*, 817 A.2d 1033, 1043 (Pa. 2002) (internal quotation marks and citations omitted). I agree with the conclusion of the trial court and the Majority that the Commonwealth proffered race-neutral explanations for striking juror numbers 15 and 22, *i.e.*, because they had no experience with the criminal system. The proffered reasons are race-neutral.

## C.

The third and critical factor in a *Batson* analysis involves determining if the defense "carried its burden of proving purposeful discrimination." *Watkins*, 108 A.3d at 708 (citation omitted). "It is at this stage that the persuasiveness of the facially neutral explanation proffered by the Commonwealth is relevant." *Commonwealth v. Towles*, 106 A.3d 591, 601 (Pa. 2014), *cert. denied*, 135 S. Ct. 1494 (2015) (citation omitted).

The whole of the discussion regarding the striking of prospective juror numbers 15 and 22 included the following:

> THE COURT: The issue is this. And I want to make sure the record is clear. You have a right to strike whoever you want to strike, as long as it's not for gender or racial reasons. My question is, so

- 15 -

that the record is clear for later on, the last person that you struck, No. 22, what was the reason there?

[THE COMMONWEALTH]: **The reason was there was no experience**. There was absolutely—he wrote mechanic down on the side, has no experience, never knew anybody that was the victim of a crime, never knew anything. There was nothing to ask him. You simply said to him, sir, you marked off this; unlike the other people, where there was some dialogue, and you went on for a period of time.

\* \* \*

THE COURT: … That's your reason for 22, and the other one that was raised of somebody who also didn't answer any questions, what number was that? … **And the reason [for 15]**, [Commonwealth]?

\* \* \*

[THE COMMONWEALTH]: **Same thing**, Your Honor; just recently got here from California, states she has no—no one that she's ever known, nothing, no crimes, no one's ever been a victim of any crimes or anything like that. She just been simply in the hospitality thing. I didn't really think much of it on what she does or—

N.T. Trial, 3/01/22, at 131-33 (emphases added); *see also id.* at 97-98, 123-24 (Prospective juror numbers 15 and 22 *voir dire*).

## 1.

In its opinion, the trial court did not address those reasons but instead found that, essentially, the Commonwealth's use of peremptory challenges did not reflect any pattern of purposeful discrimination during jury selection because it accepted six of these prospective jurors, or 60% of all prospective jurors who indicated their race as "black" and exercised peremptory strikes against four of these prospective jurors, or 40% of all prospective jurors who

indicated their race as "black." The Majority does not rely on this reasoning for affirming the trial court.

The presumed reason the Majority does not rely on that reasoning is because the fact that other black jurors were empaneled or that black jurors were a majority of the jury does not mean that there was no discriminatory effect. It is well-established that under the Equal Protection Clause, "even a single instance of race discrimination against a prospective juror is unacceptable." *Flowers*, 139 S.Ct. at 2242; *see also Snyder v. Louisiana*, 128 S.Ct. 1203, 1208 (2008) (The "Constitution forbids striking even a single prospective juror for discriminatory purposes."). The reason for this is not only does it harm the defendant, but it also denies a citizen the right to participate in the administration of justice because of their race. *See Powers*, 111 S.Ct. at 1368, 1371.

The trial court also found that because the prosecution, at its urging, struck a white juror who had no experience with crime, that this cured the problem that it had struck a black juror for the same reason. This occurred when the trial court acknowledged this problem when defense counsel raised a *Batson* objection to the prosecutor's move to strike prospective juror number 24, a black woman who had served on two juries, but who had not answered "yes" to any questions about whether she or anyone close to her had personally been impacted by crime. Although the trial court noted that the parties could exercise peremptory challenges for any race-neutral issue,

it expressly warned that "if there's a white juror that is seated, who has the same characteristics, just prior jury service, not answering any of the [crime] questions [affirmatively], that's an issue." (N.T., 3/01/22, at 142). In response, the prosecutor withdrew his strike to prospective juror number 24.

Soon after, the prosecutor accepted prospective juror number 31, a white male, who also lacked any criminal experience. When defense counsel objected, pointing out that juror number 31 was similarly situated to the black jurors whom the prosecutor had elected to strike for the same reason, the prosecutor stated that he had accepted prospective juror number 31 because of what the trial court had said regarding juror number 24, but that he was "perfectly willing to strike him because he doesn't have any background." (*Id.* at 164). The court determined that striking juror number 31 cured any *Batson* issue. (*See id.* at 165-66).

It did not. While the prosecutor initially struck prospective juror number 31 before then accepting him, this did not "cure" the fact that the Commonwealth had accepted prospective white juror numbers 7, 11, 20 and 21, where none of them had answered "yes" to any crime questions on the questionnaire but struck prospective black juror numbers 15 and 22 for the same reason, which, as acknowledged by the trial court, was an issue. The Commonwealth raised this peremptory challenge to reject black jurors for reasons that it had accepted white jurors.

**2.**

While not basing its decision on the reason put forth by the trial court, the Majority nonetheless finds that there was no **Batson** violation by conducting its own totality of the circumstance analysis.

First, it reasons that the Commonwealth simply struck prospective black juror number 15 because she had no experience with crime and moved here from California where she had worked in hospitality, which the Commonwealth did not "really think much of it on what she does." N.T. Trial, 3/01/22, at 133. It struck prospective number juror 22 merely because he lacked personal experience with the criminal system and the court did not engage in lengthy dialogue with him because "[t]here was nothing to ask him." **Id.** at 132. It then goes on to find that because neither prospective juror "had any prosecution-friendly experiences, such as being or knowing a crime victim or otherwise having positive ties to law enforcement," that was a valid non-discriminatory reason for the Commonwealth to exercise it peremptory challenges to dismiss that prospective juror. Majority, at 33.

However, the same could be said for white prospective juror numbers 7, 11, 20 and 21, who lacked the same experience but whom the Commonwealth accepted. This is evidence of purposeful discrimination and the reason given was pretextual. **See Miller v. Detke**, 125 S.Ct. 2317, 2320 (2005) ("If a prosecutor's proffered reason for striking a black [prospective juror] applies just as well to an otherwise-similar nonblack [prospective juror]

who is permitted to serve, that is evidence tending to prove purposeful discrimination.").

The Majority ignore one of the real reasons that the Commonwealth found that juror number 15 was unsuitable, *i.e.*, because "She's just been simply in the hospitality thing. I didn't really think much of it on what she does …." If this reason was sufficient, that would mean that all blacks in the hospitality industry could be excluded from the jury because somehow they are inimical to the Commonwealth's interest and unable to consider the evidence and render a fair outcome. I find this reason irrational.

I would find the reasons given by the Commonwealth and accepted by the Majority to strike juror number 15 pretextual because they are not based on any evidence that would lead to that conclusion. "[I]mplausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." **Miller-El**, 123 S.Ct. at 1040 (citation omitted); **see also Commonwealth v. Garrett**, 689 A.2d 912, 917 (Pa. Super. 1997), *appeal denied*, 701 A.2d 575 (Pa. 1997) ("An explanation which at first blush appears to be clear, specific and legitimate may be exposed as a pretext for racial discrimination when considered in the light of the entire *voir dire* proceeding.") (citation omitted); **Commonwealth v. Jackson**, 562 A.2d 338, 350 (Pa. Super. 1989) (*en banc* ), *appeal denied*, 578 A.2d 926 (Pa. 1990) (citation omitted) (same). In this case, not only is the reason pretextual but it is insulting.

Second, in regard to juror number 22, in addition to not having criminal experience, the Majority states he "appeared unengaged throughout the process, suggesting he might lack the attentiveness required to follow the web of evidence the Commonwealth intended to present." Majority, at 33. The trial court made no such finding and the record does not support this inference where the court did not engage in lengthy dialogue with him because "[t]here was nothing to ask him," based on his lack of experience. In fact, a review of his answers during *voir dire* reflect that he greeted the court and answered the questions posed to him. **See** N.T. Trial, 3/01/22, at 123-24. Again, the Majority's finding of a valid reason for striking juror number 22 is not supported by the record.

The other reason the prosecutor proffered for striking juror number 22 is that he had no criminal experience, like juror number 15, applied equally to accepted white juror numbers 7, 11, 20 and 21, which proves purposeful discrimination in violation of the Equal Protection Clause of the Constitution. **See Flowers**, 139 S.Ct. at 2242; **Snyder**, 128 S.Ct. at 1208; **Miller**, 125 S.Ct. at 2320.

## IV.

I acknowledge our deferential standard of review to findings of fact made by the trial court, but that deference does not apply to the conclusions that the trial court makes from those findings. As we stated in **Edwards**:

> Although we must exercise great deference in reviewing the trial court's factual finding with respect to discriminatory intent, we do not function as a rubber stamp. **Cf. Foster v. Chatman**, ––– U.S. –––, 136 S.Ct. 1737, 1747–1755, 195 L.Ed.2d 1 (2016) (even under Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA's") double deferential standard of review, the trial court's factual finding with respect to discriminatory intent was clearly erroneous); **Commonwealth v. Monahan**, 860 A.2d 180, 185 (Pa. Super. 2004), *appeal denied*, 583 Pa. 688, 878 A.2d 863 (Pa. 2005) (In the context of a discretionary aspect of sentencing claim, in which we employ a highly deferential standard of review, we do not act as a rubber stamp.).

**Edwards**, 177 A.3d at 974.

In this case, no deference is due to the trial court because it did not make findings regarding the Commonwealth's proffered non-race related reason, but instead found that because seven of the twelve jurors were black, there was no **Batson** violation.

Finally, the majority in footnote 8 chastises the Philadelphia District Attorney accusing him of abdicating its duty to advocate on behalf of the citizens of the Commonwealth because it believes there were abundantly reasonable alternative explanations for the strikes that are fully supported by the certified record. I guess that I fall within that accusation because looking at this record, I do not find that there are abundantly reasonable explanations to justify accepting certain white jurors that had the same disqualifications as

stricken black jurors. In fact, the majority, after scouring the record, relies on its own reasons, not those of the trial court, to find no **Batson** violation. What the majority forgets is that the District Attorney has an obligation to the citizens of Philadelphia, who elected him, to insure that defendants receive a fair trial and, most pertinent here, that potential jurors are not disqualified from serving on a jury for an inappropriate reason. In this case, the District Attorney, as I do, found that certain jurors were discriminated against because of their race. I suggest that if the District Attorney based on the information provided to him (presumably including an interview of the Assistant District Attorney involved), arrived at the conclusion that there was a **Batson** violation, it would have been an abdication of his responsibility if he did not take the position that he took here.

Accordingly, because I would hold that the reasons advanced by the Commonwealth were pretextual, I would reverse the trial court, vacate the judgment of sentence and remand for a new trial, I respectfully dissent.